## Case No. 14,578.

### UNITED STATES v. BERNAL.

[1 Cal. Law J. 196.]

District Court. N. D. California. Dec. 15, 1862.

MEXICAN LAND GRANT—CONSTRUCTION—DESCRIPTION AND QUANTITY—BOUNDARIES.

[1. In 1834 an invalid soldier petitioned the governor for a tract of land called Santa Teresa, of which he had long had possession. The tract contained about two square leagues, and, after an examination into the qualifications of the petitioner, the governor made a decree of concession, describing the tract by its name, and, in a general way, by its boundaries, and referring the concession to the departmental assembly. Pending these proceedings a contest arose between the petitioner and one who was applying for an adjoining rancho, concerning a small piece of land, which the former contended was within the limits of Santa Teresa. This controversy having been referred to the departmental assembly, also, a decision was rendered in favor of the other claimant. A grant was then made to the petitioner of the rancho of Santa Teresa, according to boundaries named, but excepting therefrom the portion adjudged to the other claimant; and the grant stated the quantity as "one square league, —a little more or less." Held, that the evident intent was to except from the grant only so much of the tract as was adjudged to the other claimant; and this intent should control, although the rancho would still contain much more than "one square league."]

[2. The rule of construction which excludes from a conveyance an object named as a boundary is of very uncertain application, as to Mexican grants, where objects are frequently mentioned rather as landmarks to identify the tract, than as boundaries to which it is to extend.]

[This was a claim by Agustin Bernal for Santa Teresa, one square league in Santa Clara county. Granted July 11. 1834, by José Figueroa to Joaquin Bernal. Claim filed January 3, 1853. Confirmed by the commission September 5, 1854. and by the district court August 11, 1856. Case No. 14,583.]

HOFFMAN, District Judge. An opinion having been [filed] in this cause [Case No. 14,580], in which the various questions relative to the surveys and location of the above rancho were discussed and decided, a motion was made by the claimants for a rehearing and modification of so much of it as required the line across the valley to be run direct from the tree near the Lagunas hill, marked No. 3, to that on the Pueblo hills, marked No. 5. This motion having been granted, the counsel for certain parties, intervening for their interests, have filed a

brief in which not only the modification proposed is resisted, but the correctness of those parts of the opinion which were in favor of the claimants is discussed, and the whole subject reargued on its merits. The decree of the board which was in the same terms as that of this court, adopted the boundaries as described in the record of the judicial possession of the rancho. The description, however, of some of the lines, is derived in part from the testimony of witnesses, the principal of whom are the alcalde who gave the possession, and the assisting witnesses. Of these lines, the most important are the third and fourth. The decree directs that the third line shall be run westerly with "the meanders of Coyote creek to a point at or near the base of a hill known by the name of Las Lagunas, where a live oak tree was marked as a corner; thence southerly, crossing the road to Monterey by an oak tree, and, through a dry tulare, to a tree on the top of a mountain, marked as a corner," etc. In the record of the judicial possession it is not stated that a tree was marked at the end of the third line. The line is described as run "hasta otra vesar una loma." And the exterior line is run "from that place crossing the road to Monterey to a tulare seca, and an oak grove, until it reached the crest of the Sierra." The call in the decree for a marked tree was, therefore, derived from the testimony produced to the board, of the alcalde and assisting witnesses, by all of whom the tree was identified. That the decree referred to the one spoken of by them, is evident from the fact that no other tree at the base of the Las Lagunas had then been mentioned. And Hernandez expressly states that the line was run along the creek until the hill was passed, and the tree marked, situated about 500 varas beyond the hill. The effort now made to substitute the tree at the point marked "F" on Healey's map for that marked No. 3, is not only inconsistent with the testimony of the witnesses and the language of the act of possession (which states that the hill was passed or crossed), but also with the plain intent of the decree of the board by whom the tree at No. 3 was adopted. At the time the opinion on objections to the survey was delivered, it was supposed to be agreed by the claimants that the line from No. 3 should be run direct to No. 5, crossing, if necessary, any portion of the Lagunas hill that intervened. But it was observed that, by the concurrent testimony of all the witnesses, as well as the intrinsic probabilities of the case, it appeared that the line from No. 3 was run to a tree in the plain, passing a tulare seca and an oak grove, and thence to the hills. The claimant now asks that this line may be so located.

The decree of the board describes the western boundary as extending to tree No. 3, "southerly, crossing the road from Monterey, by an oak tree, and through a tulare

seca to a tree on the top of a mountain." This description is evidently taken from the testimony of the witnesses, who all state that, from the tree near the Lagunas (No. 3) they ran to a tree situated to the eastward of the hill of San Juan Bautista, thence to a tulare seca, and thence to a tree on the mountain. If, then, the tree, near the San Juan Bautista, can be identified, it would seem that, in strict conformity with the decree of the board, the line should be run to it, and thence by the tulare seca to the mountain. All the witnesses concur in designating this tree as situated on the plain at no great distance from the hill referred to. It is marked on Healey's map as No. 4. It is described by all of them as established as a boundary mark between the rancho of the claimant and that of Narvaez, his neighbor, on the west, and it was pointed out by them to the surveyors.

It is objected that the record of possession shows that but one line was drawn from tree No. 3 to the tree on the mountain. The language of the record is "from this place crossing the road to Monterey, to a tulare seca, an oak grove, until the crest of the mountain is reached, direction to the south, turning towards the north." It is plain from this description that the line, whether straight or composed of two lines forming an angle with each other, must have been run to the tulare seca, the roblar, and thence to the crest of the mountain. It is not stated that it was a "linea recta," and certainly a straight line to the tree on the mountain, which would fail to reach the tulare seca and the roblar, would not be run in compliance with the description in the record. The alcalde seems to have supposed that, to obtain a tract one square league in extent, it was only necessary to make the exterior lines of such a length as would make their sum amount to 20,000 varas, without regard to the figure of the tract. Under this idea he may well have treated the lines run across the plain, though in fact two, as only one, and contented himself with giving the supposed sum of their lengths; and this supposition is slightly corroborated by the obscure mention of the direction—"south turning to the north,"—indicating, perhaps, some change in the direction, such as would be produced by a deflection in the course of the line after reaching the oak tree. I find, therefore, no incompatibility between the terms of the judicial record and the testimony—at least, none sufficient to justify me in rejecting this positive and concurrent evidence of the alcalde and all the witnesses, which was manifestly adopted by the board as the basis of its decree.

It is objected that the juridical possession includes a much larger quantity of land than that granted,—"one league, more or less." It appears from the expediente that, in 1834, Bernal presented his petition to Governor Figueroa, setting forth that he was an invalid soldier, seventy years of age, with a posterity of seventy-eight souls; that, five years before, he had obtained from the ayuntamiento of San José a tract of land called "Santa Teresa;" that he had taken possession of it, occupied it with 2,100 head of cattle, mares, horses, &c., planted a vineyard, and built four houses, on it, in which he and his descendants resided. He, therefore, asked for a formal title, &c. This petition was referred by the governor to the alcalde, with directions to take testimony as to the qualifications of the petitioner, the extent of the land, &c. This order was duly executed,—all the witnesses testifying to the qualifications of the petitioner, and that the extent of the land was about two square leagues. On the 10th June, 1834, the governor made a decree of concession, declaring Bernal owner of the tract "known as Santa Teresa, bounded by the rancho of Laguna Seca, the hills of San Juan, and the lateral hills," and referring the concession to the departmental assembly. Pending these proceedings a contest arose between Bernal and one Alvirez, who was applying for a grant of the adjoining rancho of Laguna Seca, concerning a small piece of land which the former contended was within the limits of Santa Teresa, but which had been improved and occupied by the latter. This controversy, together with the respective decrees of concession, was referred to the departmental assembly, who decided in favor of Alvirez, on the ground of his prior possession. They, therefore, approved the grant to him, including the disputed tract, and, at the same time, approved the grant to Bernal, excluding the same piece of land. In the grant to Bernal the land is described as that known by the name of Santa Teresa, bounded by the rancho of Laguna Seca and that of Narvaez, by the Coyote creek and the hills of Lagunas and San Juan, with the exception of the portion adjudicated, as above stated, to Alvirez. The fourth condition states the quantity as "one square league—a little more or less."

It is evident, from these proceedings that the rancho of Santa Teresa was, at the time of the petition, of known and determinate limits. The long services, the great age, the numerous posterity, and extensive occupation, of Bernal, afforded abundant reasons to the governor for granting him the whole tract up to the hill of San Juan, understood to be two leagues in extent. When, however, the piece adjudicated to Alvirez was excepted out of it, the quantity was necessarily reduced; and it was, therefore, stated as of the extent of "one square league—a little more or less;" the dimensions of the portion excepted being, probably, unknown. But there is no reason to suppose the governor meant to deprive Bernal of any other portion of the land than that adjudicated to Alvirez, or to restrict, in any other direction, the boundaries already established by his decree of concession. Before proceeding to give the possession, the

alcalde, as usual, examined witnesses as to the boundaries of the land. They all declare that they know the tract, that it has been in the possession of Bernal, and they all, with one exception, mention the hill of San Juan Bautista as one of the landmarks. The tree marked No. 4 is at some distance to the east of the hill of San Juan Bautista. It appears, therefore, that in establishing this boundary the alcalde did not include all the land within the exterior boundary mentioned in the decree of concession, the title, and the testimony of the witnesses. Whatever, therefore, might, in other cases be the force of an objection to a judicial survey which largely exceeded the quantity mentioned in the grant, it can possess but little in this case. For the judicial officer has evidently carried into effect the intention of the governor, to give to Bernal the well-known tract of Santa Teresa, of which he had long been in possession, and which was supposed to be two leagues in extent, less the quantity appropriated to Alvirez.

It is further objected that the judicial survey includes the hill of Las Lagunas, mentioned as a boundary. But the rule of construction, which in our conveyances excludes the object named as a boundary, is of very uncertain application to Mexican grants. For it frequently happens that a cerro, or a loma, with which a rancho is said to be "colindante," is evidently intended to be included in the grant. Such objects are mentioned rather as landmarks to identify the tract, than as boundaries to which it is to extend, but which are not to be included. There is nothing, therefore, in the fact that the Lagunas hill was included in the settled monument, to justify us in disregarding the return and official determination of boundaries and delivery of possession of the land made by a competent officer, with all the forms required by the law, and contemplated in the grant, a proceeding which, under the former government, was accepted as finally and forever determining the limits of the lands conceded to its citizens. My opinion, therefore, is that the survey should be made as heretofore directed, except that the western boundary should be run from the tree No. 3, identified by the witnesses, to the oak tree mentioned by them (No. 4), and thence by the tulare seca to tree No. 5, on the crest of the mountain.